Nichols, C. J.
The defendant in error, George M. Stillinger, was treasurer of Coshocton county, *130 Ohio, from September, 1911, to the first Monday in-September, 1913. He retired on the last-named date, being succeeded in office by plaintiff in error, C. W. Teale.
Early in the year 1913 the defendant in error, as such treasurer, with the consent and approval of the newly elected treasurer, ordered from a Dayton, Ohio, concern blank tax receipts to be used for the tax collections ending December 20, 1913, and June 20, 1914, both of which collections were to be made after his term of office- had expired.
Prior to the time of the expiration of his term, the out-going treasurer caused to be entered on such blank receipts the names of the several taxpayers of the county, together with the valuation and necessary description of each tract of real estate owned by such taxpayers.
The facsimile signature of the incoming treasurer was by him furnished to the Dayton Blank Book Company and printed on the tax receipts.
In March, 1914, the defendant in error brought suit against the plaintiff in error for the sum of $225 for the making of the receipts in question, for which, it is alleged in the petition, Teale had agreed to pay.
Teale answered, his first defense being a general denial. For a second defense it was alleged that Philip and Ina Stillinger, relatives of the defendant in error, were employed by the outgoing treasurer to make the necessary entries on these blank receipts and were paid out of the funds of Coshocton county for their services the sum of $108 and $142, respectively.
*131 A reply was thereupon filed denying the allegations of the answer.
On the issues so made trial was had, resulting, in a judgment against Teale for the full amount claimed in the petition..
Error proceedings in the court of appeals resulted in an affirmance of the judgment. The supreme court admitted the case for review.
The law fixes no time for the preparation of tax receipts, but it does provide that when any tax is paid to the county treasurer he shall thereupon deliver to the person making payment a receipt specifying the land, lot or property on which the tax was assessed, the receipt to be ruled in columns setting forth, first, a description of each item of property, second, the value thereof, third, the rate of tax on each item, and fourth, the amount of taxes on each item.
In the smaller counties of the state, until recent years, it had been the custom to delay the preparation of the receipts until the moment of payment, but later, for the convenience of both the tax collector and taxpayer, the better business method was adopted of having the receipts prepared in serial number, bound in book form and made substantially ready for delivery upon tender of funds; The several county treasurers of the state put in the idle time preceding the regular taxpaying period by preparing these receipts in advance of the time when they are actually needed.
This has been done presumably to facilitate the prompt collection of the tax and to avoid the inevitable confusion incident to the receipt of customs *132 in a small room crowded with impatient people. It was primarily to avoid unnecessary delay, but was to the advantage of the treasurer as well, in that it permitted him to go more deliberately about the business, and avoid probability of error in the handling of money. The preparation of the tax receipts was manifestly an official duty of the treasurer; but it is claimed that since the duty of making such preparation in advance of the time necessary for delivery is not expressly laid on the treasurer it ceases to be service in line of duty, and that in preparing such receipts defendant in error was acting in a private and not official capacity— was, in fact, doing the work of the newly-elected treasurer, who had expressly promised to compensate him therefor.
The claim is made that the rights and liabilities of the contracting parties are similar in all respects to an engagement between private individuals.
It is quite evident that in the short time elapsing between the date of his induction into office and the date when taxpayers might appear to pay the autumnal tax the new treasurer without a largely augmented force of assistants could not prepare all the receipts, and the evidence shows that when Teale was approached by Stillinger, and informed that it had been the custom of the newly-elected treasurer to employ the outgoing treasurer to prepare the receipts, he agreed that he would pay for such preparation. It is quite natural that as a new official he would desire to start off without discommoding the public, and so, without being familiar with the facts and circumstances surrounding *133 the nature of the preparation and not knowing whose legal duty it was to make such preparation, Teale authorized Stillinger to do the work and promised to compensate him therefor.
Notwithstanding this promise on Teale’s part, the court has concluded that recovery cannot be had on this contract.
The reasons are, we think, obvious.
The services for which defendant in error seeks recovery were performed by him and his assistants in the office of the county treasurer while he was occupying such office as treasurer. The blank receipts on which the entries were made were the property of Coshocton county and no one except the defendant in error, not even the incoming treasurer, would have had the right to the possession and control thereof.
The services were rendered in county property, on county property, by officials at the time under pay by the county. And furthermore it does not appear that any part of the service was rendered after office hours, and we can therefore safely assume that the service was rendered on county time.
The significant fact appears in the testimony that an additional force of deputies was employed and paid by the county for the performance of this very labor; at least these deputies were so employed' while the work was being done, and they did do some of the work.
It would otherwise be difficult to understand why Coshocton county with a tax duplicate of but thirty-five million dollars would employ two deputies, in *134 addition to the treasurer himself and his chief deputy, to assist the treasurer in the comparatively idle months of July and August.
It is within the knowledge of all men that the treasurer’s office in these months is an exceedingly dull place. Taxpaying is supposed to be substan-. tially completed by the 20th of June. The only business worth while thereafter, until October 1st, is to make the semiannual settlement in connection with the county auditor and to discharge warrants issued by the auditor.
The testimony shows that for these two months Coshocton county paid the county treasurer and his chief deputy, Callahan, the full compensation due them, and in addition paid to Philip and Ina Stillinger the sum of $160. The testimony also shows that none other than these four persons worked at this particular job. The testimony further shows that both Ina and Philip Stillinger performed a portion of the labor of the preparation of the receipts, and that what they did not do was done by either the treasurer himself or his chief deputy.
The conclusion is irresistible that the object of the employment of the two additional deputies during these idle months was at least to assist in the performance of this duty. There is no other conceivable purpose for their employment.
It would appear that even in the absence of any statutory duty to prepare these particular receipts in advance of the time actually required for their delivery, the oath of office taken by the treasurer to faithfully administer the duties of his office would suggest the propriety of doing just what he did do.
*135 The officer elected to serve the people .and adequately paid by them should not be content to do less than consider the convenience of the people he serves, especially when in addition to his own time then available there is furnished him additional help without expense to him.
There is another insurmountable objection to permitting the judgment below to stand. It would be sanctioning the receipt of compensation additional to that allowed by law, and would therefore be in violation of law. It would also be clearly contrary to public policy.
These services, so rendered were after all only in the line of his duty. Such services having been performed by the treasurer, although in advance of the time needful, were nevertheless but the discharge of a duty devolving on the treasurer, which Stillinger was when performing the services.
It is to be further suggested that while treasurers come and go, the office is a continuing one, and, so far as the mere performance of duty is concerned, the public takes no notice of the outgoing of the old and the incoming of the new official.
In this connection, the case of Buck v. City of Eureka, 109 Cal., 504, 520, presents some very wholesome doctrine, and, we think, appropriate to the present case:
“It is of the last importance that any and every public officer entering upon the discharge of his duties should know once and for all that, be the duties onerous or be they easy, the compensation for them must be that fixed by law, and that only. * * * [The law] does emphatically say that *136 he shall not, under any circumstances, by use of the power of his office, by contract express or implied, fair or unfair, * * * obtain increased compensation for their, performance.”
Under the salary law of Ohio, the county treasurer, together with all other officials, is expressly forbidden under heavy penalty from receiving any compensation for his performance of duty in excess of that provided by law. If he is allowed to recover this judgment he will be doing indirectly the very thing forbidden by law. In spirit, this salary law forbids the receipt of extra compensation just as much from the public generally as from the county treasury. A recovery in this instance would clearly countenance the receipt of‘extra pay for public service, and while from one point of view, provided the fact that the treasurer had been already paid by the county be eliminated, it might be considered fair on the face of things, yet when carefully analyzed it would be found a violation of both the letter and spirit of the salary law. Looked at from the broad view, the retiring treasurer would be receiving double pay for the one service, and, therefore, notwithstanding Teale’s agreement to pay, the contract cannot be sanctioned, and the judgment must be reversed.

Judgment reversed.

Johnson, Wanamaker, Newman and Jones, JJ., concur.